|  |  |
|---|---|
| SARAH BIRDWELL,<br><br>    Plaintiff,<br><br>v.<br><br>AVALONBAY COMMUNITIES, INC.,<br><br>    Defendant. | Case No. 21-cv-00864-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: ECF No. 44 |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before the Court is Defendant AvalonBay Communities, Inc.'s ("AvalonBay") motion to dismiss. ECF No. 44. The Court will grant the motion in part and deny it in part.

## I.  BACKGROUND[1]

### A.  Factual Background

Plaintiff Sarah Birdwell "lives with a medical condition that causes her to be very weak in her extremities." ECF No. 43 ¶ 4. She "uses a power wheelchair for ambulation and has limited use of her arms and hands." *Id.* Further, Birdwell is unable to "walk, lift, pull, or perform activities of daily living in the same manner and with the same function as other people." *Id.* Because of this condition, Birdwell needs a home health aide for at least 15 hours per day. *Id.*

Avalon Walnut Creek is an apartment complex in Walnut Creek, California, which was developed and is owned and managed by AvalonBay. *Id.* ¶¶ 5–6. Avalon was developed between 2006 and 2009. *Id.* ¶ 19.

In 2010, Birdwell applied and was accepted for tenancy in one of the "below-market rental units" at Avalon. Prior to moving into her unit, Birdwell requested the following

---

[1] For purposes of resolving the present motion, the Court accepts as true the factual allegations in the Second Amended Complaint ("SAC"). ECF No. 43.

accommodations: "(a) a wheelchair accessible unit and (b) a two-bedroom unit to accommodate her disability-related need for an overnight health aide." *Id.* ¶ 9. Avalon's property manager stated that "he did not think the property had any wheelchair accessible units, but he could give her a two-bedroom unit at the one-bedroom rate." *Id.*

      AvalonBay "either failed to construct, or failed to maintain, the required accessible elements" at Avalon, including in Birdwell's unit. *Id.* ¶ 21. There "has [been] an ongoing practice and policy not to maintain accessible features throughout the facilities." *Id.* ¶ 23. Specifically, in Birdwell's unit (1) "[t]he entry door is excessively heavy for her and closes too quickly on her wheelchair"; (2) "[t]he kitchen lacks an accessible work surface"; (3) "[o]ne bathroom lacks the required maneuvering clearance on the inside to allow sufficient space to open the door"; (4) "[t]he other bathroom does not provide sufficient strike-side clearance to open the door on the pull side." *Id.* ¶ 21. Additionally, the following "code violations impede . . . Birdwell's access to common areas and tenant amenities": (1) there are only half of the required number of accessible resident parking spaces in the Sunne Lane garage; (2) there are no accessible hybrid or electric vehicle parking spots in the Sunne Lane garage; (3) there is no "accessibility signage" in the Sunne Lane garage; (4) neither of the swimming pools has a functioning wheelchair lift; (5) one of the swimming pool decks has a two inch "change of level built into" it; (6) the barbeque grills are inaccessible; (7) there is "insufficient strike side clearance, excessively high thresholds, doors too heavy and/or closing too quickly, [and] bottom rail [that is] not tapered" in the "corridors, swimming pools, lounge areas and restrooms"; (8) there are "improperly installed truncated domes and a ramp where the handrail extension does not extend far enough past the end of the ramp" in the "common area paths of travel"; (9) the restrooms in the common areas "lack sufficient turning radius, elements such as grab bars, toilet paper[,] and sanitary napkin dispensers[,]" properly installed door handles, and insulated hot water pipes; (10) the "swimming pool shower . . . does not allow leg space, the folding seat is too far from the wall[,] and the shower arm is out of reach range"; (11) in the common areas, "wayfinding signage for accessible routes is missing, wrongly positioned or confusing"; (12) the "[c]ard readers installed for security at common area doors and elevators are placed too high or at locations difficult for [Birdwell] to reach"; and (13) the doors

"relock too quickly, before she can maneuver through the door." *Id.* ¶ 22.

In 2016, AvalonBay threatened to evict Birdwell if she did not move into a one-bedroom unit because "she was violating its housing policies" by "living in a two-bedroom unit as the only person on the lease." *Id.* ¶ 11. Birdwell reminded AvalonBay that she required a two-bedroom unit as a reasonable accommodation. *Id.* AvalonBay required Birdwell to submit a new reasonable accommodation request, along with a note from her home health aide. *Id.*

In 2018, Birdwell discovered that AvalonBay was charging her rent at the two-bedroom unit rate, rather than the one-bedroom unit rate. *Id.* ¶ 12. Birdwell requested that AvalonBay reduce her rent to the one-bedroom rate because she needed the two-bedroom unit as a reasonable accommodation. *Id.* In September 2018, AvalonBay denied the request, but it agreed that Birdwell needed a two-bedroom unit as a reasonable accommodation. *Id.* ¶ 13.

During the summer of 2019, Pacific Gas and Electric ("PG&E") commenced rotating power outages, also known as "rolling blackouts," in Walnut Creek because of the wildfires throughout Northern California. *Id.* ¶ 16. The elevators in the Avalon were out of service during these outages. *Id.* Birdwell "made reasonable accommodation requests for assistance getting out of her apartment during [these] power outages" because she used a wheelchair and lived on the second floor. *Id.* ¶ 17. AvalonBay denied the request and "did not engage in any interactive process." *Id.* AvalonBay stated that if Birdwell needed assistance, she should call the fire department. *Id.* Because she "could not envision calling the fire department twice a day for assistance," Birdwell "remain[ed] in her apartment until the power returned." *Id.* ¶ 18.

Birdwell retained counsel who sent AvalonBay a demand letter on her behalf on June 25, 2020 that informed AvalonBay that charging Birdwell the two-bedroom unit rate violated federal and state law. *Id.* ¶ 15. Birdwell and AvalonBay engaged in pre-litigation negotiations between June and October 2020, during which AvalonBay stated that it would continue to charge Birdwell the two-bedroom unit rent. *Id.*

**B.     Procedural History**

Birdwell filed this action against AvalonBay on February 3, 2021. ECF No. 1. AvalonBay answered the complaint on March 3, 2021. ECF No. 10. On May 20, 2022, Birdwell filed a first

1  amended complaint, ECF No. 28, which AvalonBay answered on June 3, 2022, ECF No. 29.  On

2  December 15, 2022, Birdwell filed a motion for leave to file a SAC, ECF No. 37, which

3  AvalonBay did not oppose, ECF No. 41.  The Court granted the motion for leave to file a SAC on

4  January 25, 2023, ECF No. 42, and Birdwell filed the SAC on February 1, 2023, ECF No. 43.  The

5  SAC brings claims for (1) violations of the Fair Housing Amendments Act ("FHAA"); (2)

6  violations of the Americans with Disabilities Act ("ADA"); (3) violations of California's Fair

7  Employment and Housing Act ("FEHA"); and (4) violations of California Unruh Civil Rights Act

8  ("Unruh Act").  *Id.* ¶¶ 28–63.

9  AvalonBay now moves to dismiss the SAC.  ECF No. 44.  Birdwell opposes the motion,

10  ECF No. 45, and AvalonBay filed a reply, ECF No. 46.

## II.   JURISDICTION

The Court has jurisdiction over Birdwell's federal claims under 28 U.S.C. §§ 1331 and has supplemental jurisdiction over Birdwell's state law claims under 28 U.S.C. § 1367(a).

## III.   LEGAL STANDARD

"Dismissal under [Federal Rule of Civil Procedure] 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Facts pleaded by a plaintiff "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

Additionally, "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Because a Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion, 'the same standard of review applies to motions brought under either rule.'" *Gregg v. Hawaii*, 870 F.3d 883, 887 (9th Cir. 2017) (quoting *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). Accordingly, a motion for judgment on the pleadings is properly granted when, 'taking all the allegations in the pleadings as true, the moving party is entitled to judgment as a matter of law.'" *Id.* (quoting *Nelson v. City of Irvine*, 143 F.3d 1196, 1200 (9th Cir. 1998)). "Rule 12(c) does not mention leave to amend; however, courts generally have discretion in granting 12(c) motions with leave to amend, particularly in cases where the motion is based on a pleading technicality." *In re Dynamic Random Access Memory (Dram) Antitrust Litig.*, 516 F. Supp. 2d 1072, 1084 (N.D. Cal. 2007). "There is a strong policy in favor of allowing amendment, unless amendment would be futile, results from bad faith or undue delay, or will unfairly prejudice the opposing party." *Id.*

## IV.   DISCUSSION

### A.   Timeliness of the Motion

The parties dispute whether AvalonBay's motion to dismiss, given that AvalonBay answered Birdwell's complaint and first amended complaint. ECF Nos. 44 at 11 & n.2, 45 at 11–15, 46 at 7–8.

"A Rule 12(b)(6) motion must be made *before* the responsive pleading." *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006) (emphasis in original) (quoting *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004)); *see also* Fed. R. Civ. P. 12(b) ("A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."). While "[t]he Ninth Circuit has not squarely addressed the issue of whether amending or consolidating a complaint allows an opposing party a second opportunity to file a 12(b)(6) motion, after the objection has initially been waived," *Townsend Farms v. Goknur Gida Madderleri Enerji Imalat Ithalat Ihracat Ticaret Ve Sanayi A.S.*, No. SACV 15-0837-DOC (JCGx), 2016 WL 10570248, at *5 (C.D. Cal. Aug. 17, 2016), district courts "have determined amending a complaint does not automatically revive defenses and objections the defendant had

5

1    previously waived," *id.* at *6 (collecting cases).  Accordingly, when a defendant has answered the
2    previous complaint, the "defendant may bring a Rule 12(b) motion objecting to an amended
3    complaint only to the extent the challenges asserted in that motion are based on the new matter in
4    the amended complaint." *Pascal v. Concentra, Inc.*, No. 19-cv-02559-JCS, 2020 WL 4923974, at
5    *2 (N.D. Cal. Aug. 21, 2020).

6          Here, AvalonBay moves to dismiss both new claims in the SAC—Birdwell's ADA claim
7    and Unruh Act claim based on violations of the ADA—and claims that appeared in the previous
8    complaints—Birdwell's FHAA claim, FEHA claim, and other theories of recovery under the
9    Unruh Act.  AvalonBay's motion to dismiss is only proper with respect to Birdwell's ADA claim
10   and Unruh Act claim that is based on violations of the ADA.

11         However, in the Ninth Circuit, "if a motion to dismiss for failure to state a claim is made
12   after the answer is filed, the court can treat the motion as one for judgment on the pleadings"
13   under Rule 12(c) of the Federal Rules of Civil Procedure.  *Aldabe v. Aldabe*, 616 F.2d 1089, 1093
14   (9th Cir. 1980); *see also MacDonald*, 457 F.3d at 1081 ("Defendants filed their motion to dismiss
15   *after* filing their answer.  Thus, the motion should have been treated as a motion for judgment on
16   the pleadings, pursuant to Rule 12(c) or 12(h)(2)." (emphasis in original) (quoting *Elvig v. Calvin
17   Presbyterian Church*, 375 F.3d 951, 954 (9th Cir.2004)).  Courts convert untimely motions to
18   dismiss into motions for judgment on the pleadings "where doing so will not delay trial." *Jaeger
19   v. Howmedica Osteonics Corp.*, No. 15-cv-00164-HSG, 2016 WL 520985, at *5 (N.D. Cal. Feb.
20   10, 2016) (converting a motion to dismiss into a motion for judgment on the pleadings); *see also
21   Ulloa v. Securitas Sec. Servs. USA, Inc.*, No. 23-cv-01752-DMR, 2023 WL 5538276, at *2 (N.D.
22   Cal. Aug. 28, 2023) (same).  Because "[m]otions for judgment on the pleadings are reviewed
23   under an identical legal standard as motions to dismiss for failure to state a claim upon which
24   relief can be granted, . . . there is no risk of prejudice to either party." *Jaeger*, 2016 WL 520985,
25   at *5.  Additionally, "[t]he case for [converting a motion to dismiss to one for judgment on the
26   pleadings] is further strengthened where . . . the answers included the defense of failure to state a
27   claim." *Aldabe*, 616 F.2d at 1093.

28         Here, considering AvalonBay's complete motion will not delay trial because it is not

scheduled until May 20, 2024. ECF No. 75. Consequently, the Court will also consider AvalonBay's arguments to dismiss Birdwell's FHAA, FEHA, and non-ADA-based Unruh Act claims to pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

### B. FHAA Claims

AvalonBay argues that the FHAA claim should be dismissed because (1) Birdwell's requested accommodations were unreasonable, and therefore, she has failed to a state a claim; and (2) certain of Birdwell's theories of recovery are barred by the statute of limitations. ECF No. 44 at 12–16. The Court addresses each argument in turn.

#### 1. Failure to State a Claim

The FHAA "prohibits discrimination in the form of 'a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.'" *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189 (9th Cir. 2021) (quoting 42 U.S.C. § 3604(f)(3)(B)). "[A] failure-to-accommodate plaintiff must show: 1) the existence of a covered handicap; 2) the defendant's knowledge or constructive knowledge of that handicap; 3) that an accommodation 'may be necessary'; 4) that the accommodation is reasonable; and 5) that the defendant refused to make the necessary and reasonable accommodation upon request." *Salisbury v. City of Santa Monica*, 998 F.3d 852, 857–58 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 771 (2022). AvalonBay argues that Birdwell fails to satisfy the third and fourth elements, i.e.., the allegations do not establish that the accommodations were necessary to afford her an equal opportunity to use and enjoy her unit or that the accommodations were reasonable.

First, AvalonBay argues that Birdwell's request to be charged rent at the one-bedroom unit rate is not "necessary to afford [her] her equal opportunity to use and enjoy" her unit because "she has resided in the building for 12 years without this accommodation, more than four of which have transpired since she contends she first raised the complaint about the rent with AvalonBay." ECF No. 44 at 12. It also argues that the accommodation is not reasonable because the FHAA "does not impose a rent subsidization requirement on landlords." *Id.* Birdwell counters that her request "was reasonable and was avowed to be granted, but she was charged for the accommodation in

7

violation of" the FHAA.  ECF No. 45 at 20.  Birdwell also contends that "[t]he motion to dismiss raises a dispute of fact about whether the accommodation is 'necessary' for [her] and whether requiring it to pay the cost of the accommodation is reasonable, i.e., an undue burden."  *Id.* at 21.

Second, AvalonBay argues that Birdwell's claim based on the failure to grant an accommodation in response to PG&E's rotating power outages fails because she does not allege "what she proposed as accommodations"; instead, she merely alleges that "she 'made reasonable accommodation requests.'"  ECF No. 44 at 14.  Birdwell responds that "the reasonable accommodation request made is plain on the face of the Complaint: 'assistance getting out of her apartment.'"  ECF No. 45 at 24.

To prove that an accommodation is necessary, "[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice."  *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003) (quoting *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996)).  "Put another way, '[w]ithout a causal link between defendants' policy and the plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation.'"  *Id.* (quoting *United States v. Cal. Mobile Home Park Mgmt. Co. ("Mobile Home Park II")*, 107 F.3d 1374, 1381 (9th Cir. 1997)).  "In addition to causation, equal opportunity is a key component of the necessity analysis; an accommodation must be possibly necessary to afford the plaintiff equal opportunity to use and enjoy a dwelling."  *Id.*

"[A]n accommodation is reasonable under the FHAA 'when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens.'"  *Id.* at 1157 (quoting *Howard v. City of Beaver Creek*, 276 F.3d 802, 806 (6th Cir. 2002)).  "This inquiry examines whether the accommodation 'is both efficacious and proportional to the costs to implement it.'"  *Hernandez v. Golf Course Ests. Home Owners Ass'n*, 454 F. Supp. 3d 1029, 1037–38 (D. Or. 2020) (quoting *Bhogaita v. Altamonte Heights Condominium Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014)).  "It is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits."  *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 138 (2d Cir. 1995).  "[T]he history of the

8

FHAA clearly establishes that Congress anticipated that landlords would have to shoulder certain costs involved, so long as they are not unduly burdensome." *United States v. Cal. Mobile Home Park Mgmt. Co. ("Mobile Home Park I")*, 29 F.3d 1413, 1416 (9th Cir. 1994). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *Mobile Home Park II*, 107 F.3d at 1380.

Here, Birdwell has sufficiently pleaded facts that plausibly allege that her request for a two-bedroom unit was necessary and reasonable. It is undisputed that AvalonBay permitted Birdwell to live in a two-bedroom unit because it was necessary to accommodate her need to have an overnight home health aide, *see* ECF No. 43 ¶¶ 9–11, and that she was and continues to be charged rent based on the two-bedroom rate, *see id.* ¶¶ 12, 15. Hence, by requiring that Birdwell pay rent based on the two-bedroom unit rate, AvalonBay is imposing a fee "with unequal impact, imposed in return for permission to engage in conduct that, under the FHAA, a landlord is required to permit," *Mobile Home Park I*, 29 F.3d at 1417. The Court is not persuaded that requiring the waiver of the additional fee for an extra bedroom "would extend a preference to handicapped residents, as opposed to affording them equal opportunity." *Id.* at 418. Waiving the extra rent for a two-bedroom unit is similar to the fee at issue in *Mobile Home I* because "it seems likely that few other residents would have a 'guest' requiring an [extra bedroom] every day," making it "much less probable that waiver of [the additional rent] would give [Birdwell] an advantage over other residents." *Id*. at 418 n.4. Therefore, Birdwell sufficiently pleads that her accommodation request was necessary and reasonable. The Court denies AvalonBay's motion to dismiss on this ground.

However, Birdwell has not alleged sufficient facts to support that her request for assistance exiting her apartment during the PG&E rotating power outages was reasonable. Birdwell alleges only that she requested the accommodation of assistance exiting out of her apartment during the power outages. Birdwell fails to allege how AvalonBay could reasonably have accommodated this request. Without these facts, the Court is unable to analyze whether the accommodation is in fact reasonable. The Court therefore grants AvalonBay's motion to dismiss on this claim. Because the Court cannot say that amendment of the complaint would be futile, it grants Birdwell

leave to amend. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1135 (9th Cir. 2012) ("Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency.").

### 2. Statute of Limitations

AvalonBay argues that Birdwell's theories of recovery based on the design and construction of Avalon and AvalonBay's denial of her request to be charged rent at the one-bedroom rate are time barred. ECF No. 44 at 15–16. Birdwell counters that her allegations regarding the design and construction of Avalon are not time barred because she alleged that AvalonBay "maintained a pattern and practice of denying [Birdwell] full and equal access to her dwellings[.]" ECF No. 45 at 26. And that because AvalonBay "expressly denied" her request to be charged rent at the one-bedroom unit rate "in 2010, 2016[,] and 2020 and has asserted its intention to continue denying the request," she has established "a pattern and practice of discrimination that constitutes a continuing violation." *Id.* at 26–27.

Under the FHAA, a plaintiff "may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice[.]" 42 U.S.C. § 3613(a)(1)(A). "In other words, an aggrieved person must bring the lawsuit within two years of either 'the occurrence . . . of an alleged discriminatory housing practice' or 'the termination of an alleged discriminatory housing practice.'" *Garcia v. Brockway*, 526 F.3d 456, 461 (9th Cir. 2008).

But pursuant to the continuing violation doctrine, "where a plaintiff, pursuant to the Fair Housing Act, challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380–81 (1982); *see also* 42 U.S.C. § 3613(a)(1)(A) (codifying the continuing violation doctrine). Accordingly, a plaintiff's claims are timely when the alleged claim is "based not solely on isolated incidents . . . , but a continuing violation manifested in a number of incidents— including at least one . . . that is asserted to have occurred within the 180-day period[.]" *Havens Realty Corp.*, 455 U.S. at 381. "Put differently, '[a] continuing violation is occasioned by

continual unlawful acts, not by continual ill effects from an original violation.'" *Garcia*, 526 F.3d at 462 (quoting *Ward v. Caulk*, 650 F.2d 1144, 1147 (9th Cir. 1981)). Additionally, "[a] plaintiff must show that a pattern or practice of discrimination creates an ongoing violation" "to sue for all discriminatory acts that occurred . . . outside the limitations period." *The Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 701 (9th Cir. 2009). "However, discrete discriminatory acts will not create a pattern of discrimination without more; pattern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on 'discriminatory conduct that is widespread.'" *Id.* (quoting *Cherosky v. Henderson,* 330 F.3d 1243, 1247 (9th Cir.2003)).

   Here, Birdwell's allegations do not demonstrate that AvalonBay engaged in "widespread" discriminatory conduct. *See id.* First, Birdwell alleges that AvalonBay denied her initial reasonable accommodation request because it has been charging her rent at the two-bedroom unit rate since she moved into the building in 2010, and that AvalonBay denied additional requests to be charged at the one-bedroom unit rate in 2018 and 2020. Birdwell must allege more than three denials of the same request accommodation to establish a widespread discriminatory practice or pattern of AvalonBay denying reasonable accommodations requests. Without sufficient allegations to establish a pattern or practice, Birdwell can proceed only on the denials of her request to be charged rent at the one-bedroom rate that occurred within the statute of limitations period.

   Second, Birdwell's allegations regarding her inability to access her dwelling are all based on barriers that appear to have been in existence since she moved into the Avalon in 2010. Birdwell does allege that AvalonBay has "an ongoing practice and policy not to maintain accessible features throughout the facilities," but this conclusory allegation is insufficient to demonstrate that AvalonBay has engaged in a pattern or practice of widespread discriminatory conduct in its construction and design of buildings during the statute of limitations period. Instead, Birdwell must allege facts that demonstrate that AvalonBay's "failure to comply with the federal disability laws is a direct result-not of individualized decisions pertaining to a particular facility-but instead, to [AvalonBay's] alleged pattern and practice of relying on inadequate

11

guidelines and procedures that fail to ensure the requisite access to" Birdwell. *Californians for Disability Rts., Inc. v. California Dep't of Transp.*, No. C 06-5125 SBA, 2009 WL 2982840, at *2 (N.D. Cal. Sept. 14, 2009). Thus, currently, Birdwell pleads only that AvalonBay engaged in the discriminatory practice of failing to design and construct the Avalon in compliance with the FHAA, and therefore, "[t]he statute of limitations [was] . . . triggered at the conclusion of the design-and-construction phase, which occurs on the date the last certificate of occupancy is issued." *Garcia*, 526 F.3d at 462. Birdwell alleges that this occurred between 2006 and 2009, which is well outside of the two-year statute of limitations.

Accordingly, the Court grants AvalonBay's motion to dismiss with respect to Birdwell's allegations regarding the inaccessibility of Avalon, as well as AvalonBay's denials of Birdwell's requests to be charged rent at the one-bedroom unit rate that occurred outside of the statute of limitations period. The Court denies AvalonBay's motion with respect to Birdwell's allegations regarding denials of her requests to be charged rate at the one-bedroom unit rate that occurred within the statute of limitations. Additionally, the Court grants Birdwell leave to amend because it cannot say that amendment of the complaint would be futile. *Harris*, 682 F.3d at 1135 ("Dismissal without leave to amend is appropriate only when the Court is satisfied that an amendment could not cure the deficiency.").

### C. ADA Claim

AvalonBay argues that Birdwell's ADA claim fails because (1) she lacks standing and (2) she has not alleged that violations exist in areas that are made available to the general public for rental or use. ECF No. 44 at 17–18. The Court now addresses each argument.

#### 1. Standing

AvalonBay argues that Birdwell does not have standing to bring her ADA claim because she "does not explain how and when she intended to utilize any of the public use area facilities[.]" AvalonBay misunderstands what is required to plead standing under the ADA. A plaintiff may establish standing under the ADA by showing that they have "actual knowledge" of a barrier at a place of public accommodation which deters them from returning. *C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1099 (9th Cir. 2017). The plaintiff need not "personal[ly]

1  encounter" such barriers. *Id.* Therefore, how and when Birdwell intended to use the public areas
2  within the Avalon is irrelevant to whether she has standing. Birdwell's complaint states that
3  "[s]he has encountered most of these barriers," and "has been deterred from using" those that she
4  has not encountered. ECF No. l43 ¶ 23. She thus has standing to seek relief for those barriers.
5  The Court denies AvalonBay's motion to dismiss on this ground.

### 2. Public Accommodation

AvalonBay argues that Birdwell has not sufficiently alleged that the violations of the ADA are in areas that are "made available to the general public for rental or use." ECF No. 44 at 17 (citation omitted). Birdwell counters that the "'leasing office,' 'garage[,]' and 'paths of travel to and through the property' identify specific areas of the facilities that [AvalonBay], being the owner of the property, can easily identify as areas open to the general public," and she "used the umbrella term 'common area' to capture violations under both the ADA in places open to the public and the FHA/FEHA and Unruh violations in the tenant only areas." ECF No. 45 at 17.

"Under federal law, apartments and condominiums do not, generally speaking, constitute public accommodations within the meaning of the ADA." *Trostenetsky v. Keys Condo. Owners Ass'n*, No. 17-cv-04167-RS, 2018 WL 2234599, at *2 (N.D. Cal. May 16, 2018). However, areas within an apartment or condominium complex may be covered by the ADA "[i]f made available to the general public for rental or use[.]" *Id.*; *see also Sawyer v. Pac. Beach House, LLC*, No. 21-cv-05140-DMR, 2022 WL 1136797, at *4 (N.D. Cal. Apr. 18, 2022).

Here, Birdwell generally alleges that the Avalon "includes areas that are open to the general public, e.g., the leasing office, paths of travel to and through the property, and parts of the garages." ECF No. 43 ¶ 40 (emphasis omitted). A "leasing office . . . is a place of public accommodation subject to the ADA." *Johnson v. Beahm*, No. 2:11-cv-0294-MCE-JFM, 2011 WL 5508893, at *3 (E.D. Cal. Nov. 8, 2011) (citing ADA Title III Technical Assistance Manual, which states that a "rental office [in a residential apartment complex] is a place of public accommodation"). However, because Avalon's paths of travel to and through the property, parts of the garages, and other common areas "appear to be part of the residential condominium complex where [Birdwell] resides, there is no basis to infer that these facilities are intended for the

13

use of anyone other than residents and their guests." *Trostenetsky*, 2017 WL 11715361, at *3. Thus, Birdwell has alleged that she was denied access to a public accommodation only with respect to the leasing office. The Court therefore grants AvalonBay's motion to dismiss with respect to barriers other than those in the leasing office, but it will grant leave to amend because it appears "that the pleading could . . . be cured by the allegation of other facts." *OSU Student All. v. Ray*, 699 F.3d 1053, 1079 (9th Cir. 2012) *cert. denied*, 134 S. Ct. 70 (2013) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)). Any amended pleading shall identify which common areas are part of her ADA claim and which common areas are part of her FHAA claim. Additionally, "[Birdwell] should note that 'public' portions of apartment complexes that are not commercial spaces are not necessarily places of public accommodation." *Moore v. Equity Residential Mgmt., L.L.C.*, No. 16-cv-07204-MEJ, 2017 WL 897391, at *3 (N.D. Cal. Mar. 7, 2017) (collecting cases).

### D. State Law Claims

AvalonBay argues that the Court should dismiss Birdwell's state law claims "[t]o the extent that the state law claims rely on legal standards coextensive with the federal claims[.]"[2] ECF No. 44 at 19. Birdwell does not dispute that her state law claims rely on the same legal standards as her federal claims. *See* ECF No. 45. Accordingly, the Court also dismisses Birdwell's state law claims that rely upon the same legal standards as the parts of the Unruh Act and ADA claims that the Court has dismissed. *See Cabrera v. Alvarez*, 977 F. Supp. 2d 969, 975

---

[2] AvalonBay also asks the Court to "decline jurisdiction over the Unruh Act claim" pursuant to *Arroyo v. Rosas*, 19 F.4th 1202, 1209–16 (9th Cir. 2021). *Id.* However, Birdwell's ADA and Unruh Act claims "form part of the 'same case or controversy' for purposes of § 1367(a)" because they both "derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Arroyo*, 19 F.4th at 1209 (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925 (9th Cir. 2003)). While a district court "may decline to exercise supplemental jurisdiction over a claim" when one of four exceptions applies," AvalonBay provides no explanation as to why any of the exceptions apply. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if[] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."). Accordingly, the Court will not decline to exercise supplemental jurisdiction over Birdwell's Unruh Act claim.

1 (N.D. Cal. 2013) (collecting cases) ("The provisions of FEHA and the Unruh Act involved in this case protect substantially the same rights as the FHA [and ADA] provisions at issue and are subject to the same analysis.")  As with Birdwell's ADA and Unruh Act claims, the Court grants leave to amend. *OSU Student All.*, 699 F.3d at 1079 (quoting *Lopez*, 203 F.3d at 1130).

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part AvalonBay's motion. Birdwell has not sufficiently alleged that her request for the accommodation of assistance exiting her apartment was reasonable, or that AvalonBay engaged in a pattern or practice of discriminatory conduct.  Additionally, Birdwell has not sufficiently alleged that areas within the Avalon other than the leasing office are public accommodations.  Birdwell's FHAA and ADA claims that are based on these allegations are dismissed with leave to amend.  To the extent that Birdwell's state law claims are predicated on the dismissed FHAA and ADA claims, Birdwell's state law claims are also dismissed with leave to amend.

Leave to amend is granted solely to cure the deficiencies identified in this order.  Any amended complaint shall be filed within 21 days.

**IT IS SO ORDERED.**

Dated:  September 27, 2023


JON S. TIGAR
United States District Judge

15