CELIA McGUINNESS, ESQ. (SBN 159420)
STEVEN L. DERBY, ESQ. (SBN 148372)
DERBY, McGUINNESS & GOLDSMITH, LLP
1999 Harrison St., Suite 1800
Oakland, CA 94612
Telephone: (510) 987-8778
Facsimile: (510) 359-4419
Email: cmcguinness@dmglawfirm.com
      sderby@dmglawfirm.com
      eservice@dmglawfirm.com

Attorney for Plaintiff
SARAH BIRDWELL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SARAH BIRDWELL,<br><br>    Plaintiff,<br><br>v.<br><br>AVALONBAY COMMUNITIES, INC.,<br>a California Corporation<br><br>    Defendants. | CASE NO. 4:21-cv-00864-JST<br><br>Civil Rights<br><br>**THIRD AMENDED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1) Violation of the Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq*.<br><br>2) Violation of the Americans with Disabilities Act Title III, 432 U.S.C. § 12181 *et seq*.<br><br>3) Violation of the Fair Employment and Housing Act, Cal. Gov't Code § 12955 *et seq*.<br><br>4) Violation of the Unruh Civil Rights Act, Cal. Civil Code §51 *et seq*.<br><br>**DEMAND FOR JURY TRIAL** |

### INTRODUCTION

1.     Defendant, a billion-dollar real estate development and property management company, is discriminating against Plaintiff, a disabled tenant, by making her pay the cost of her reasonable accommodation request for a modification of their occupancy policy. Defendant also

fails to construct and maintain its new facilities in compliance with the Fair Housing Act and State law. Defendant's failure and refusal to accommodate Plaintiff's disability-related needs denies her equal enjoyment of her home in violation of federal and State disability laws.

## JURISDICTION

2. This Court has jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. § 1331 for violations of 29 U.S.C. § 794. This Court has jurisdiction over the pendent state law claims brought under California law pursuant to 28 U.S.C. § 1367.

## VENUE

3. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this District and that Plaintiff's causes of action arose in this District.

## PARTIES

4. Plaintiff Sarah Birdwell is a graphic designer and teacher. She lives with a medical condition that causes her to be very weak in her extremities. She uses a power wheelchair for ambulation and has limited use of her arms and hands. She cannot walk, lift, pull, or perform activities of daily living in the same manner and with the same function as other people. She has a home health aide at least 15 hours per day. She is and at all times relevant to this action has been a person with a disability within the meaning of the federal Fair Housing Act (42 U.S.C. § 3602), the California Fair Employment and Housing Act ("FEHA") (Government Code §§ 12926 and 12926.1), the California Unruh Civil Rights Act ("Unruh Act") (Civil Code § 51) and Civil Code § 3345. She drives a wheelchair-accessible vehicle and holds a disabled parking placard from the State of California.

5. Ms. Birdwell rents an apartment at Avalon Walnut Creek, an apartment complex in Walnut Creek, California. Defendant's employees are aware that Ms. Birdwell is a person with disabilities, as her disabilities are obvious upon seeing her.

6. Defendant AvalonBay Communities, Inc., is a California corporation. It describes itself as "an equity REIT" with "a long-term track record of developing, redeveloping, acquiring and managing distinctive apartment homes." It calls itself the 9th largest publicly traded REIT in the U.S. It owns or holds an ownership interest in 294 apartment communities containing 86,676 apartment homes in 11 states and the District of Columbia. It developed, owns and manages Avalon Walnut Creek, comprising 418-apartments and amenities such as a parking garage, and a swimming pool.

7. Defendant AvalonBay Communities, Inc. holds out on its website that "As someone seeking to rent an apartment…..you have the right to expect that housing will be available to you without discrimination or other limitations based on race, color, religion, sex, handicap, familial status, or national origin. This includes….no discrimination in the pricing or financing of housing, reasonable accommodation in rules, practices and procedures for persons with disabilities, and to be free from harassment or intimidation for exercising your fair housing rights. Defendant lists the Fair Housing Act, Americans with Disabilities Act and State and Local Laws as the basis for going to "great lengths to comply with the Fair Housing Act" http://www.avaloncommunities.com/equal-housing-opportunity-communities, lasted visited December 1, 2020.

8. Defendant also represents that one of its core values is to "take ownership of and accountability for our choices and actions. We act in ways that focus on creating value for our customers…" http://www.avaloncommunities.com/about-us/purpose-and-values, lasted visited December 1, 2020.

**FACTS COMMON TO ALL CLAIMS**

Denial of Reasonable Accommodation Requests

9. In order to qualify for tax credits and other development incentives, Avalon Walnut Creek offers a certain percentage of below-market rental units. Ms. Birdwell qualifies for a below market unit. When she was accepted for tenancy in 2010, Ms. Birdwell asked for (a) a wheelchair accessible unit and (b) a two-bedroom unit to accommodate her disability-related need

for an overnight health aide. The property manager at the time, told her he did not think the property had any wheelchair accessible units, but he could give her a two-bedroom unit to accommodate her disability.

10. Ms. Birdwell accepted the two-bedroom unit as her best option, though it was not accessible. Relying on the manager's word that her accommodation request had been granted and not having any basis for comparison, Ms. Birdwell assumed that she was being charged the one-bedroom price, as an accommodation of her disability.

11. In 2016, Defendant notified Ms. Birdwell that she was violating its housing policies because she was living in a two-bedroom unit as the only person on the lease. Defendant threatened to evict her unless she moved to a one-bedroom unit. Ms. Birdwell reminded management of the fact that her two-bedroom unit was a reasonable accommodation of her disability-related needs, an accommodation she had been granted eight years earlier. Defendant asked her to put a new reasonable accommodation request in writing, and to provide a note from her caregiver. She did so.

12. In 2018, Plaintiff learned she was being charged more than the one-bedroom rate. She raised the issue with management, stating that based on her accommodation she should be paying the one-bedroom rate. In July 2018, Defendant confirmed it indeed was charging her the two-bedroom rate. Plaintiff asked to be charged only the one-bedroom rate, in accordance with her need for accommodation.

13. Defendant decided to continue imposing the cost of the accommodation on her. In September 2018, Defendant refused to charge her the one-bedroom rate, even though it agreed the two-bedroom unit was a reasonable accommodation of her disability. Its only "interactive process" suggestion was that Plaintiff move out of her unit. "Granting" an accommodation but expecting the tenant to pay for it is actually a denial of the accommodation.

14. Defendant has never claimed that paying for the reasonable accommodation would be an unreasonable financial or administrative burden upon it. Plaintiff is informed and believes it would not unreasonably burden Defendant, which enjoyed $147,700,000 net profit over the first three quarters of 2020 alone.

15. In 2020, Plaintiff retained counsel, who sent Defendant a letter on June 25, 2020, warning Defendant that it was violating Plaintiff's federal and State civil rights by making her pay for the accommodation. Plaintiff's counsel asked Defendant reduce Plaintiff's rent to the one-bedroom rate. In prelitigation negotiations between June and October 2020, Defendant repeatedly reiterated its intent to continue charging Plaintiff for her reasonable accommodation.

16. Defendant has a widespread policy and practice of discrimination against Plaintiff and others similarly situated by charging the cost of an accommodation to the tenant when the tenant requires a larger unit on the basis of disability. It has discriminated against Plaintiff consistently and repeatedly in the following ways: In 2010, it began the practice of charging her the cost of her accommodation. Each month from September 2010 to the present – 158 consecutive months and continuing -- it has presented her with a bill for the full cost of the 2 bedroom apartment instead of the 1 bedroom rate she would be paying if not for her disability-related need. Additionally, since 2018 it has stated consistently and intentionally in writing, in person, and under oath, that it will not pay the cost of the accommodation. Its unwavering position over almost 14 years, combined with its actual billing practices, constitutes a widespread policy and practice of discrimination.

<u>Additional Denial of Reasonable Accommodation</u>

17. In the summer of 2019, PG&E enforced rolling electricity blackouts due to rampant wildfires. During the outages, the elevators in Ms. Birdwell's building were out of service. She lives on the second floor of her building. Therefore, she was trapped in her unit for three straight days. She could not work, keep appointments, shop or keep social engagements.

18. Plaintiff made reasonable accommodation requests for assistance getting out of her apartment during power outages. Defendant denied her request and told her to call the fire department for assistance. It did not claim that granting the request would be an undue burden.

19. There were a number of reasonable accommodations Defendant could have granted that would either have provided Plaintiff exactly what she asked for or otherwise met her need for independence during power outages: It could have (1) retained a nonemergency medical transport company specializing in transporting nonmobile people down stairs to assist Plaintiff,

1  such as one of the 14 companies in Contra Costa County on this list vetted by the California
2  Department of Health Care Services, https://www.dhcs.ca.gov/services/medi-cal/Documents/List-
3  of-Approved-NonEmergency-Medical-Transportation-Providers.pdf (last visited October 3,
4  2023); (2) provided her with alternate hotel accommodations for the duration of the outage, a
5  solution that is mandated by law under Berkeley Municipal Code section 19.50 *et seq*.,
6  https://berkeley.municipal.codes/BMC/19.50 (last visited October 3, 2023; (3) instead of assisting
7  her to leave her apartment, it could have offered to pay for grocery delivery and/or provide
8  someone to carry items up the stairs for her; (4) it could have purchased an evacuation chair and
9  trained its personnel to use it to assist Plaintiff and other tenants with disabilities to get up and
10 down stairs. But Defendant did not engage in any interactive process, as a landlord is required to
11 do when it thinks that a tenant's initial request is unreasonable.

12      20.    Defendant told Plaintiff that her only option if she wanted to leave her unit was to
13 call the fire department for EMT assistance.  Thus, Defendant foisted its responsibility for its
14 tenants' needs onto taxpayers and burdened public services.  Ms. Birdwell could not envision
15 calling the fire department twice a day for assistance.  She had no choice to remain in her
16 apartment until the power returned.

17      <u>Physical Barriers to Access in the Facilities</u>

18      21.    Avalon Walnut Creek is a new property which contains multifamily residential
19 units as well as retail space.  Based upon a review of publicly available records, Plaintiff is
20 informed and believes that Phase I of the property was developed in 2006 through 2009 for first
21 occupancy in 2010, and that Phase II of the property was developed in 2018-2020, for first
22 occupancy in 2021.

23      22.    The tenant areas of Avalon Walnut Creek were required to be built in compliance
24 with both the American National Standard Access Standards and the California Building Code,
25 Title 24-2 Chapter 11A, in order to ensure equal access to facilities for people with disabilities.

26      23.    The public accommodation areas of Avalon Walnut Creek were required to be
27 constructed in compliance with the Americans with Disabilities Act Guidelines for Phase I and
28 the ADA Standards for Phase II. The public accommodation areas of the facility in both Phases

were required to be constructed in compliance with the California Building Code Title 24-2, Chapter 11B.

24. The following areas of the facilities which are tenant common areas also are public accommodation areas under federal and State law:

- The leasing office, including its restroom:  It is open to the public, including anyone enquiring about or applying for tenancy.
- The path of travel through the main doors into the lobby, and through the lobby to the ground level parking.  This path of travel, which flows between the main entry on the street and the ground-level garage, is open to the general public, including people enquiring about or applying for tenancy and people who park on the ground level of the garage.  The ground level of the garage contains parking designated for tenancy prospects as well as what AvalonBay calls "visitor" parking serving the retail areas of the development, which are next to the leasing office.
- One or more Lounges in Phase II is open to the general public because they can be rented by the public for private events.  These lounges are found on an upper floor of Phase II.  They are reached via the lobby of the Phase II building, which is therefore also a public accommodation area.

25. Defendant either failed to construct, or failed to maintain, the required accessible elements.  As a result, violations of these building requirements pervade the facilities, interfering with her full and equal enjoyment of the facilities.  For example, in Plaintiff's apartment:

- The entry door is excessively heavy for her and closes too quickly on her wheelchair.
- The kitchen lacks an accessible work surface.
- One bathroom lacks the required maneuvering clearance on the inside to allow sufficient space to open the door;
- The other bathroom does not provide sufficient strike-side clearance to open the door on the pull side.

These elements cause Plaintiff difficulty and reduce her independence within her own home.

26. Other code violations impede Ms. Birdwell's access to common areas and tenant amenities. The barriers include:

- There are 194 unassigned resident parking spaces in the Sunne Lane garage serving her unit, but only 5 are accessible, half the number required, causing her difficulty when she cannot find a place to park.
- None of the additional two Hybrid Vehicle parking spaces and 14 Electric Vehicle parking spaces are accessible.
- The garage lacks the required accessibility signage in the visitor and residential areas.
- At one of the swimming pools there is absolutely no means of entry for a wheelchair user like plaintiff. At the other pool there is a sleeve installed to place a wheelchair lift, but the lift is at all times stored in a closet and has never been placed in service. She has never been able to use either pool any time during her tenancy.
- In addition, at one of the pools the newly-installed deck had an approximately 2" change of level built into it where it meets the original decking, creating a safety hazard for her.
- At 1001 Harvey, the BBQ grills are not accessible to her.
- Doors throughout the common areas, including 1000 and 1001 Harvey, in corridors, swimming pools, lounge areas and restrooms, contain various barriers causing her difficulty and safety hazards, *e.g.*, insufficient strike side clearance, excessively high thresholds, doors too heavy and/or closing too quickly, bottom rail not tapered. Some of these doors are subject to both the residential construction codes only; others also are subject to the ADA and CBC codes for commercial facilities because they are areas of public accommodation.
- Other problems in the common area paths of travel include improperly installed truncated domes and a ramp where the handrail extension does not extend far enough past the end of the ramp.

- Common area restrooms at the pool, the leasing office and the fitness center lack sufficient turning radius, elements such as grab bars, toilet paper and sanitary napkin dispensers and door handles are not properly installed, and hot water pipes are not insulated.
- Additionally, the 1000 Harvey swimming pool shower is not properly constructed in that the lavatory does not allow leg space, the folding seat is too far from the wall and the shower arm is out of reach range.
- Card readers installed for security at common area doors and elevators are placed too high or at locations difficult for Plaintiff to reach. When she uses her card to unlock these doors or call the elevator they relock too quickly, before she can maneuver through the door. She has often had to make several attempts just to get through a door.

27. These barriers cause her difficulty and discomfort, as she cannot get to and use spaces in the common areas without a struggle, let alone simply getting in and out of her building. She has encountered most of these barriers; others she has been deterred from using, *e.g.*, there is no point using the pool shower since she cannot use the pool itself.

28. Defendant has never maintained its accessible features and even after this action as filed has an ongoing practice and policy not to maintain accessible features throughout the facilities. Defendant AvalonBay does not have any written policy for maintaining accessible features in its facilities. In particular, it does not have a policy or practice to regularly test that common area doors are compliant with state and federal requirements for weight and swing speed. During the entire time of Plaintiff's tenancy, these doors have been excessively heavy for her. Upon inspection by Plaintiff's representatives, their weight was found to be out of compliance with the applicable regulations.

29. Because of Defendant's unlawful acts and practices, Ms. Birdwell has suffered and continues to suffer ongoing distress including violation of her civil rights, embarrassment, loss of dignity, loss of independence, and physical pain. Defendant's refusal to grant her reasonable accommodation requests evidences its intent to discriminate, despite actual knowledge of the law.

30. Unless enjoined, Defendant will continue to engage in the unlawful acts and the pattern or practice of discrimination described in this complaint against Plaintiff and other disabled persons. Plaintiff continues to suffer irreparable damage and thus has no adequate remedy at law. Accordingly, Plaintiff is entitled to injunctive relief as set forth below.

31. In doing the acts of which Plaintiff complains, Defendant acted with oppression and malice, and with knowing disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to punitive and exemplary damages.

32. In engaging in the unfair acts of which Plaintiff complains, Defendant knew that its conduct was directed at a disabled person, Plaintiff, and that conduct caused her harm, entitling her to a trebling of penalties and statutory and punitive damages pursuant to Civil Code section 3345.

**FIRST CAUSE OF ACTION:
VIOLATION OF THE FEDERAL FAIR HOUSING ACT
AGAINST ALL DEFENDANTS
[42 U.S.C. § 3601 ET SEQ.]**

33. Plaintiff incorporates by reference the preceding paragraphs.

34. The Fair Housing Amendments Act (FHA) makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of any person associated with that person." 42 U.S.C. § 3604(f)(2)(A).

35. Discrimination under the FHA also includes a refusal "to permit, at the expense of the handicapped person, reasonable modifications of existing premises occupied or to be occupied by such person if such modifications may be necessary to afford such person full enjoyment of the premises" and "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(3)(A), (B).

36. Plaintiff is a "handicapped person" as defined at 42 U.S.C. § 3602 of the FHA. Plaintiff is also an "aggrieved person" because she has been injured by a discriminatory housing practice and believes it will continue unless remediated by this Court. 42 U.S.C.A. § 3602(i).

37. Plaintiff's apartment is a "dwelling" within the meaning of the FHA. 42 U.S.C. § 3602(b).

38. Defendant has violated the FHA as follows:

   a. Failing and refusing to grant reasonable accommodation requests that may be necessary for Plaintiff to have equal access to her home;

   b. Defendant has a pattern and practice, and a policy, to charge for the cost of a larger unit granted for disability-related needs.

39. Plaintiff has suffered and continues to suffer actual damages as a result of Defendant's refusal to provide this accommodation that would afford Plaintiff the ability to enjoy her home on an equal basis with other tenants.

40. Plaintiff has no adequate remedy at law to compensate her for the continuing loss of opportunity to enjoy the amenities for which she pays and therefore seeks an order from this court enjoining Defendant to grant her reasonable accommodation request.

41. Plaintiff further seeks a mandatory injunction requiring Defendant to implement and disseminate policies and procedures regarding the handling of requests for accommodation by tenants and to provide proper training to their employees on these policies and procedures, to grant her reasonable accommodation requests, and to remove physical barriers to access throughout the property.

42. The barriers to full and equal enjoyment of Plaintiff's home complained of herein as well as the failures to adopt and modify policies and procedures for granting reasonable accommodation requests are patent barriers to people with disabilities and are of an obvious and intuitive nature such that failing to grant the request or to modify policies demonstrates intentional discrimination. Defendant is familiar with the requirements for the provision of accessible features and policies, for use by people with disabilities and are aware that such matters are governed by federal and State fair housing laws. Defendant intentionally refused to grant the reasonable accommodation in the face of Plaintiff's direct, timely and written requests for its assistance and its own attorney's advice, and failed to adopt or modify policies and procedures to provide access to Plaintiff and persons similarly situated. Plaintiff's damages

resulted from Defendant's intentional acts and omissions.

WHEREFORE, Plaintiff requests relief as outlined below.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
**[42 U.S.C. § 12181 et seq.]**

43. Plaintiff incorporates by reference the preceding paragraphs.

44. Plaintiff was denied full and equal enjoyment of and access to Defendant's goods, services, facilities, privileges, advantages, or accommodations in violation of the ADA. The condition of Defendant's facility and/or the manner in which Defendants provided services failed to provide full and equal access to Defendant's goods and services in public accommodations as required generally by the provisions of 42 U.S.C. sections 12182(a) and 12182(b)(1)(A), denying her participation and providing her an unequal and separate benefit compared to its able-bodied customers.

45. The facilities at Avalon Walnut Creek includes areas that are open to the general public comprise public accommodations as defined in 42 U.S.C. section 12181(7). Defendant owns and operates the public accommodation areas.

46. Plaintiff is a person with a physical disability as alleged above. Moreover, Plaintiff has a history of or has been diagnosed and/or classified as having a physical impairment under 42 U.S.C. § 12102(2)(A).

47. Defendant denied Plaintiff equal access to and enjoyment of the facility as follows:

   a. By "failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12183.

   b. Alternatively or additionally, by failure to alter its facilities in a manner that is "readily accessible to and usable by individuals with disabilities." 42 U.S.C. section 12183(a)(2); 28 C.F.R. §§ 36.402, 36.403.

   c. By failing to "remove architectural barriers . . . that are structural in nature, in

existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A). Plaintiff alleges that the removal of each of the specific barriers that Plaintiff encountered as set forth above, was at all times, "readily achievable" pursuant to the factors outlined in the statute and the regulations under 28 CFR Part 36.  Further, assuming, *arguendo*, that Defendant were able to meet its burden of proof that the removal of architectural barriers was or is not "readily achievable," Defendant has conspicuously failed to make its goods, services, facilities, privileges, advantages and/or accommodations available through alternative readily achievable means pursuant to the requirements of 42 U.S.C. section 12182(b)(2)(A)(v).

    d. By failing to maintain features that are required to be accessible pursuant to 28 CFR section 36.211.

    e. By failing to "make reasonable modifications in policies, practices and procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. §12182(b)(2)(A)(ii). Defendant failed and refused to reasonably modify its policies, practices, and procedures in that it failed to have a scheme, plan, or design to assist Plaintiff and/or others similarly situated in enjoying and utilizing Defendant's services, facilities, privileges, advantages, or accommodations, as required by the ADA. Additionally, Defendant conspicuously failed to adopt required policies and procedures to allow people with disabilities to effectively navigate the Facility.

48. The elements and features in the public accommodation areas that are not accessible to Plaintiff (as enumerated in Paragraph 22, *supra*) include, *e.g.*, the leasing office and its restroom, the lounge(s) available for rental to the public, "visitor" and public areas of the garage, and doors and thresholds in the public path of travel to and through these public accommodation areas.  Plaintiff uses each of these areas and has encountered barriers in them.

49. Plaintiff was damaged and will suffer irreparable harm unless Defendant is ordered to discontinue business at the Facility or: (i) remove architectural and other barriers at Defendant's property and otherwise obey the requirements of the ADA and (ii) adopt policies and procedures that comport with the requirements of the ADA with respect to the enjoyment of the facilities by guests with disabilities. Defendant's discriminatory conduct is capable of repetition, and this discriminatory repetition adversely impacts Plaintiff and a substantial segment of the disability community. There is a national public interest in requiring accessibility in places of public accommodation. Plaintiff has no adequate remedy at law to redress the discriminatory conduct of Defendant. As a tenant, Plaintiff has no choice but to experience the public accommodation areas of Avalon Walnut Creek. Accordingly, Plaintiff alleges that a prohibitory or mandatory injunction is necessary to assure that Defendant complies with the applicable requirements of the ADA.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**
**AGAINST ALL DEFENDANTS**
**[Cal. Gov't Code § 12955 et seq.]**

50. Plaintiff incorporates by reference the preceding paragraphs.

51. The California Fair Employment and Housing Act (FEHA) makes it unlawful for a housing accommodation to discriminate against any person on the basis of…disability…."

52. Pursuant to Cal. Gov't Code 12955.1 discrimination under FEHA includes a failure to design and to construct multi-family housing that allows access to and use by disabled persons. Such must include at a minimum:

    a. At least one building entrance on an accessible route, unless it is impracticable to do so because of the terrain or unusual characteristics of the site;

    b. All public and common areas are readily accessible to and useable by persons with disabilities;

    c. Interior Doors allow passage to persons in wheelchairs;

    d. Units have accessible route to and through the dwelling unit;

    e. Units have kitchens and bathrooms that can be accessed by and be useable to

persons in wheelchairs.

53.　Plaintiff's condominium is a housing accommodation within the definition of Government Code section 12927 and a "covered multi-family dwelling" within the definition of Government Code Section 12955.1.1

54.　Defendant is an "owner" within the meaning of Government Code § 12927(e).

55.　Plaintiff is a "person with a disability" as defined by Cal. Gov't Code § 12955.3 and § 12926.

56.　Defendant has violated FEHA as follows:

　　a.　Failing and refusing to grant reasonable accommodation requests that may be necessary for Plaintiff to have equal access to her home.

　　b.　Failing and refusing to engage in a good faith, timely interactive process regarding Plaintiff's requests for a reasonable accommodation.

　　c.　Failure to construct and maintain facilities in an accessible condition, in conformity with the California Building Code and Cal. Gov't Code Section 12955.1.

57.　Plaintiff has suffered actual injury as a result of Defendant's discriminatory behavior.

58.　Plaintiff has no adequate remedy at law to compensate her for the loss of opportunity to enjoy her home and therefore seeks an order from this court enjoining Defendant as previously described.

59.　The barriers to full and equal enjoyment of Plaintiff's home complained of herein as well as the failures to adopt and modify policies and procedures for granting reasonable accommodation requests are patent barriers to people with disabilities and are of an obvious and intuitive nature such that failing to grant the request or to modify policies demonstrates intentional discrimination. Defendant is familiar with the requirements for the provision of accessible features and policies, for use by people with disabilities and are aware that such matters are governed by federal and State fair housing laws. Defendant intentionally refused to grant the reasonable accommodation in the face of Plaintiff's direct, timely and written requests

for its assistance and its own attorney's advice, and failed to adopt or modify policies and procedures to provide access to Plaintiff and persons similarly situated. Plaintiff's damages resulted from Defendant's intentional acts and omissions.

WHEREFORE, Plaintiff requests relief as outlined below.

**FOURTH CAUSE OF ACTION
VIOLATION OF CALIFORNIA UNRUH CIVIL RIGHTS ACT
AGAINST ALL DEFENDANTS
[CIVIL CODE § 51 *et. seq.*]**

60.  Plaintiff incorporates by reference the preceding paragraphs.

61.  Plaintiff is a person with a disability as defined by §12926 of the California Government Code.

62.  Defendant is an owner and/or operator of a business establishment under the Unruh Act, Civil Code section 51.

63.  Unruh requires that Defendant provides Plaintiff as a disabled person "full and equal accommodations, advantages, facilities, privileges, or services" of Avalon Walnut Creek.

64.  Section 52(a) of the California Civil Code provides:

> (a) Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Sections 51, 51.5, or 51.6.

65.  Defendant has violated the Unruh Act as follows:

   a.  Failing and refusing to grant reasonable accommodation requests that may be necessary for Plaintiff to have equal access to her home.

   b.  Failing and refusing to engage in a good faith, timely interactive process regarding Plaintiff's requests for a reasonable accommodation.

   c.  Failure to construct and maintain facilities in an accessible condition, in conformity with the California Building Code.

   d.  Violating the Americans with Disabilities Act (ADA) as incorporated into

Unruh, Civil Code section 51(f).  A violation of the ADA is *per se* a violation of the Unruh Act.

66. As a result of Defendant's acts and omissions, Plaintiff suffered actual harms and losses including but not limited to physical and mental pain, fear, embarrassment and emotional distress.  Plaintiff's harms and losses are ongoing so long as Defendant does not modify its policies and procedures to ensure equal access for Plaintiff and other persons with disabilities. Plaintiff has no adequate remedy at law to compensate her for the loss of opportunity to enjoy her home on an equal basis and therefore seeks, in addition to all appropriate actual damages, an order from this court enjoining Defendant as described above.

67. The barriers to full and equal enjoyment of Plaintiff's home complained of herein as well as the failures to adopt and modify policies and procedures for granting reasonable accommodation requests are patent barriers to people with disabilities and are of an obvious and intuitive nature such that failing to grant the request or to modify policies demonstrates intentional discrimination. Defendant is familiar with the requirements for the provision of accessible features and policies, for use by people with disabilities and are aware that such matters are governed by federal and State fair housing laws. Defendant intentionally refused to grant the reasonable accommodation in the face of Plaintiff's direct, timely and written requests for its assistance and its own attorney's advice, and failed to adopt or modify policies and procedures to provide access to Plaintiff and persons similarly situated. Plaintiff's damages resulted from Defendant's intentional acts and omissions.

68. Based upon the foregoing, Plaintiff is entitled to statutory damages, actual damages, punitive and general damages as set forth below.

**PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests.

WHEREFORE, Plaintiff prays for judgment and the following specific relief against

Defendant:

1. For an order enjoining Defendant, its agents, officers, employees, and all persons acting in concert with it:

   a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

   b. To grant the reasonable accommodation Plaintiff has requested;

   c. To properly engage in the interactive process with Plaintiff and others similarly situated to arrive at an effective accommodation that will provide her equal access to her home;

   c. To train Defendant's employees and agents in how to lawfully accommodate the rights and needs of physically disabled persons;

   e. To implement and disseminate nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities;

   f. To remove physical barriers to access and maintain accessible features; and

2. That the Court retain jurisdiction over the Defendant until such time as the Court is satisfied that Defendant's unlawful policies, practices, acts and omissions, as complained of herein no longer occur, and cannot recur;

3. Award to Plaintiff all appropriate damages, including but not limited to statutory damages, general damages, treble damages and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

4. Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by federal and state law;

5. Grant such other and further relief as this Court may deem just and proper.

Dated:  October 18, 2023            DERBY, McGUINNESS & GOLDSMITH, LLP

                                    ___/s/ Celia McGuinness_____
                                    By:   Celia McGuinness
                                          Attorneys for Plaintiff

## DEMAND FOR JURY

Plaintiff hereby demands a jury for all claims for which a jury is permitted.

Dated:   October 18, 2023                    DERBY, McGUINNESS & GOLDSMITH, LLP


                                            */s/ Celia McGuinness*
                                        By:   Celia McGuinness
                                              Attorneys for Plaintiff